**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KATHERINE PUFFER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 5764 |
| | ) | |
| v. | ) | Magistrate Judge Schenkier |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ALLSTATE'S REPLY MEMORANDUM ON ISSUES OF NOTICE OF THE DENIAL
OF CLASS CERTIFICATION AND TOLLING OF THE STATUTE OF LIMITATIONS**

**I.      INTRODUCTION**

In her Memorandum of Law In Support of Her Motion for Stay of the Statute of Limitations and For Rule 23 Notice to Class Members ("Plaintiff's Memo"),[1] plaintiff fails to cite any controlling authority; nor does she identify any evidence to justify the unprecedented relief she seeks from this Court. As Allstate has explained, nothing in Rule 23 requires notice to issue to former putative class members after a motion for class certification has been *denied*. Moreover, plaintiff has not offered any evidence from which this Court could infer that notice should issue as a matter of equity. Indeed, based on the proposed notice attached to her brief, plaintiff has only confirmed that her request for notice is nothing more than a solicitation effort to identify additional litigants to sue Allstate. Plaintiff's desire to solicit additional clients is not an endeavor on which this Court should place its imprimatur.

As to the issue of tolling the limitations period, plaintiff does not contest that the statute of limitations resumed running against putative class members once this Court entered its denial

---

[1]      Allstate refers to its opening Memorandum on the Issue of Notice of the Denial of Class Certification and Further Tolling of the Statute of Limitations as "Allstate's Opening Memo."

of class certification. Plaintiff's intervening Rule 23(f) petition does not change that fact. In any event, the denial of certification stripped this case of its status as a putative class action. As this Court rightly questioned, at the moment class certification was denied, the Court lost any personal jurisdiction over the former putative class members and any subject matter jurisdiction over whatever claims they may or may not have. As a result, the Court does not have authority to enter any orders affecting the rights of these persons, and therefore lacks the power to enter a blanket tolling order over members of the former putative class. But even if the Court did have jurisdiction to act, as plaintiff's own cases underscore, the matter of equitable tolling can be decided only on a case-by-case basis in live actions brought by litigants who contend they had good reason to delay in bringing suit. Consequently, this Court should refrain from distributing a Court-sanctioned notice or issuing a global tolling order.

## II. ARGUMENT

### A. Plaintiff's Memo Confirms that Neither the Law Nor the Evidence Supports the Issuance of Notice Here.

#### 1. Neither Rule 23 Nor The Prevailing Law Requires Notice.

Relying generally on notions of "due process" and "fairness," plaintiff argues that Rule 23(d)'s provisions relating to orders made to "protect *class members*" provide the Court with the authority to issue notice to putative class members upon denial of certification.[2] (Plaintiff's Memo at 5 (emphasis added.).) This argument was addressed and squarely rejected, however, in *Marian Bank v. Electronic Payment Servs., Inc.*, No. 95-614-SLR, 1999 WL 151872 (D. Del.

---

[2] In support of her argument that Rule 23(d) permits the Court to issue notice as a matter of "due process and fundamental fairness," plaintiff cites a single case, *In re Zyprexa Products Liability Litigation*, 253 F.R.D. 69, 209 (E.D.N.Y. 2008). *Zyprexa*, however, does not involve the issue of notice at all. Rather, in *Zyprexa*, *after certifying a class*, the court issued an order under Rule 23(d) unsealing documents. Therefore, *Zyprexa* does not support, let alone mandate, the result plaintiff seeks here.

March 12, 1999) (**Exhibit A** to Allstate's Opening Memo).  After the *Marian* court denied the plaintiff's motion for class certification, plaintiff moved the court, under Rule 23(d), to provide putative class members with notice "'of the need and opportunity for an intervenor to represent the class and thereby preserve the rights of absent class members.'"  *Id*. at *1.  The *Marian* court denied plaintiff's motion for notice, holding that the language of Rule 23(d) contemplates the issuance of such notices "only ***after*** a court has ***certified*** a class action," whereas, [i]n the case at bar, ***no class action exists***.  *Id*. at *2 (emphasis added).  Indeed, the *Marian* court concluded that limiting the operation of Rule 23(d) to certified class actions "prevents courts from inciting litigation where none yet exists."  *Id*.; *see also* 1966 Advisory Committee Notes to Rule 23(c)(1) ("A negative determination [on the issue of class certification] means that the action should be stripped of its character as a class action.").  As such, Subsection (d) of Rule 23 does not support plaintiff's request for notice.

Similarly, plaintiff cannot establish that Subsection (e) of Rule 23, which in its post-amendment form applies only in ***certified class action cases*** that have been settled or voluntarily dismissed, is applicable here.  *See* FED. R. CIV. PRO. 23(e); *see also Pearson v. Skydell*, 522 F.2d 171, 177 (5th Cir. 1975) ("[W]here a court has ruled . . . that an action cannot properly be maintained as a class action the notice requirements of Rule 23(e) do not apply[.]").  Although plaintiff relies heavily on *Culver v. City of Milwaukee*, 277 F.3d 908, 913-14 (7th Cir. 2002) in support of her request for notice, all *Culver* held was that *decertification* was tantamount to dismissal, such that Rule 23(e)'s notice provisions applied.  In other words, where the class members were entitled to rely on the action to vindicate their rights, at least for the period of time it was certified as a class action, then notice of decertification was warranted.  Any *dicta* in *Culver* regarding notice being issued pre-certification was effectively nullified by the 2003

3

Amendments to Rule 23(e). Neither *Culver* nor the plain language of Rule 23(e) assists plaintiff.

In the other cases plaintiff cites, Rule 23(e)'s notice provision was implicated only because the case previously had been certified – thereby imbuing class members with an entitlement to rely on the action to vindicate their rights – and subsequently decertified (Plaintiff's Memo at 6-7 (citing *Birmingham Steel Corp. v. Tennessee Valley Authority*, 353 F.3d 1331, 1339 (11th Cir. 2003) (ordering notice after decertification); *Barner v. City of Harvey*, No. 95 C 3316, 2004 WL 2092009 (N.D. Ill. Sep. 15, 2004) (same)), or because the case had been settled after certification. (Plaintiff's Memo at 2, 7 (citing *Air Lines Stewards & Stewardesses Ass'n. v. American Airlines, Inc.*, 455 F.2d 101, 108 (7th Cir. 1972); *In re General Electric Capital Corp. Bankruptcy Debtor Reaffirmation Agreements Litig.*, Nos. MDL 1192, 98CV3065, 97CV9002, 2000 WL 45534 (N.D. Ill. March 13, 2000); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999)).[3] These cases do not support plaintiff's argument that here, where the Court declined to certify a class in the first instance, notice of that decision should issue.

That leaves plaintiff with *Radmanovich v. Combined Ins. Co. of Am.*, 271 F. Supp. 2d 1075 (N.D. Ill. 2003). However, as Allstate has explained, *Radmanovich* was decided ***prior to*** the December 2003 amendment to Rule 23(e) and specifically relied in part on pre-amendment rulings from the Seventh Circuit involving Rule 23(e) notices in the pre-certification context. (Allstate's Opening Memo at 3-4.)

---

[3] Plaintiff cites one other case, *Doe v. Lexington-Fayette Urban County Gov't*, 407 F.3d 755, 764 (6th Cir. 2005), where the court, relying on the *dicta* in *Culver*, held that notice should have been sent to putative plaintiffs where pre-certification class action claims had been settled. However, that *dicta* in *Culver* was effectively nullified by the 2003 amendments to Rule 23(e). (Allstate's Opening Memo at 3.) Moreover, *Doe* involved distinguishable facts. In that case, the court held there was a sufficient basis to conclude that putative class members had reasonably relied on the lawsuit because it had received widespread publicity through various media outlets. *Id.* As explained here and in Allstate's initial memorandum, no facts, compelling or otherwise, suggest such reliance in this case.

Apart from being overruled or rendered irrelevant by the amendments to Rule 23(e), the *Radmanovich* ruling stands in stark contrast to the weight of the authority that has affirmatively rejected requests for notice to putative class members where a motion for class certification has been denied. *See Pan American World Airways, Inc. v. United States District Court for Cent. Dist. Cl. of Cal.*, 523 F.2d 1073, 1078-79 (9th Cir. 1975) (rejecting argument that Rule 23 requires notice to putative class members after denial of certification); *Fuller v. Instinet, Inc.*, No. 99 Civ. 11453 (BSJ), 2004 WL 3699810 (S.D.N.Y. Jan. 29, 2004) (distinguishing *Culver*'s decertification holding and concluding that notice is not warranted where class action status has been denied) (**Exhibit A** to Allstate's Opening Memo); *Marian Bank*, 1999 WL 151872 at *2-3 (denying motion for issuance of notice to intervene after class certification motion was denied) (**Exhibit A** to Allstate's Opening Memo); *Rineheart v. Ciba-Geigy Corporation*, 190 F.R.D. 197, 200-02 (M.D. La. 1999) (declining to issue notice after the denial of class certification); *First Interstate Bank of Nevada, N.A. v. Chapman & Cutler*, No. 83 C 8583, 1986 WL 10050 (N.D. Ill. Sept. 8, 1986) (denying request for notice after denial of class certification) (**Exhibit A** to Allstate's Opening Memo), *aff'd* 837 F.2d 775 (7th Cir. 1988); *Maddox & Starbuck, Ltd. v. British Airways*, 97 F.R.D. 395, 397 (S.D.N.Y. 1983) (putative class members not required to be notified of denial of class certification); *Weisman v. Darneille*, 78 F.R.D. 671, 674 (S.D.N.Y. 1978) (denying request for production of list of "class members" for purposes of notifying them of denial of class certification, stating there are "no class members and no class rights to be protected.").

In sum, there is no authority, either in Rule 23 or in the valid jurisprudence, that supports plaintiff's request for notice.

5

### 2. Plaintiff Has Not Shown That Any Putative Class Member Received A Communication Sufficient to Justify Reasonable Reliance.

Conveniently glossing over the content of various communications, plaintiff makes the broad assertion that "virtually every" putative class member has been "on notice" of plaintiff's "class-wide allegations of gender discrimination." (Plaintiff's Memo at 3.) However, after making this claim, plaintiff does nothing to establish that there is a group of people who in fact believed that this lawsuit operated to vindicate their rights, or that such belief was reasonably held. Thus, the fact remains that none of the putative class members received formal or informal notice from this Court, and plaintiff essentially concedes that none received notice from either of the parties that this litigation served to protect or vindicate their rights, or even that this litigation operated to toll the statute of limitations on their claims.

As Allstate explained in its Opening Memorandum, not a single statement on plaintiff's counsel's website, in letters sent by plaintiff's counsel, or in the internal litigation hold memoranda distributed by Allstate could have induced any putative class member to rely on this lawsuit. (Allstate's Opening Memo at 5-7.) [4] In each of these communications, the putative class members were merely informed that the lawsuit "potentially" covered female managers or that plaintiff "was seeking" class action status. Nothing in these communications gave putative class members any rational reason to sit on their rights, and plaintiff's generalized assertions to the contrary are belied by the very words of the written communications.

Plaintiff also argues that a conference call Declarant 28 conducted with some unidentified

---

[4] To correct the record, plaintiff incorrectly states that plaintiff's counsel have not initiated any communications with putative class members since the Court entered its June 13, 2007 Order relating to communications with a represented party under Model Rule 4.2. (Plaintiff's Memo. at 3, 5.) As this Court knows, plaintiff's counsel did send a second letter to putative class members on June 27, 2007, after this Court's Order. Certainly, a letter that should never have been sent in the first instance cannot be used to justify Court-ordered notice now.

group of putative class members induced reliance on the lawsuit on the part of the conference call participants. (Plaintiff's Memo at 4.) However, even a cursory read of the transcript pages where Declarant 15 describes what she was told in that call by Declarant 28 betrays any such inference. Nothing in that transcript reveals that Declarant 15 understood that this lawsuit would vindicate her rights. All Declarant 15 said was that Declarant 28 told her that plaintiff clamed wage discrimination and that she could choose to participate in the litigation on behalf of Allstate if she so desired. (Exhibit F to Plaintiff's Memo at 31, 34.) Noticeably absent from Declarant 15's description of the communication was any discussion about the lawsuit serving to vindicate the rights of the women on the call or any discussion about the tolling of the statute of limitations during the pendency of the action. (*Id.*)

### 3. Plaintiff Clearly Intends To Use Notice To Solicit Further Litigation.

Perhaps most importantly, plaintiff's proposed notice reveals plaintiff's true intentions here: to solicit and encourage litigation against Allstate. Even assuming that notice is proper or warranted here, which it is not, it is well-settled that Rule 23 notices must contain information that is accurate, objective and neutral. *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985). Plaintiff's proposed notice fails on every score. Plaintiff's proposed language is biased and misleading and goes well beyond merely notifying putative class members that the case is no longer proceeding as a class action.

*First*, plaintiff provides legal advice by itemizing for putative class members the various types of action one could take in order to assert claims against Allstate. Indeed, the notice does so repeatedly, listing the options on page two and again on page three of the proposed notice. *Second,* the advice is misleading. The proposed notice states that former putative class members in the instant suit may intervene in the instant suit. However, intervention in non-class cases is

only permissible if the intervenor's claims arise from the ***same*** alleged misconduct. *See Horton v. Jackson County Bd. Of County Commissioners*, 343 F.3d 897, 900 (7th Cir. 2003). This Court has already ruled that the putative class members' claims are dissimilar and lack commonality with one another. Accordingly, intervention is not an option for the great majority, if any, of the former putative class members.

*Third,* phrases such as "TAKE ACTION," "you should act quickly" and "you must take action" are also peppered throughout the proposed notice, obviously in a manner designed to spur recipients into litigation. As the Court in *Kleiner* ruled, "a solicitations scheme relegates the essential supervision of the court to the status of an afterthought." 751 F.2d at 1203. Any uncertainty about the purpose of plaintiff's proposed notice is eliminated when one reads that the proposed notice repeatedly directs the recipients to contact plaintiff's counsel. While the proposed notice does so ostensibly for purposes of answering questions about the notice or the Order denying certification, clearly the contact is designed to identify additional litigants and to secure new clients by plaintiff's counsel. *Griffith v. Javitch, Block & Rathbone*, LLP, 241 F.R.D. 600, 601 (S.D. Ohio 2007) (rejecting as inadequate plaintiff's proposed notice which "simply invite[d] contact with Plaintiff's counsel."). The bottom line is that plaintiff's request for notice is in reality a request that the Court make contact with the represented parties she had already been ordered not to contact, for the purpose of soliciting new claims. For the same reason, plaintiff's request for a list of putative class members' addresses should be denied. *See Weisman*, 78 F.R.D. at 674 (holding that a plaintiff is not entitled to class list where no class has been certified and raising ethical concerns about the use of any such list).

Cases where courts have admonished litigants for using Rule 23 to solicit litigation are many. *See First Interstate Bank of Nevada, N.A. v. Chapman & Cutler*, No. 83 C 8583, 1986

8

WL 10050 (N.D. Ill. Sept. 8, 1986) ("notice to the class is not a device by which to solicit claims"); *see also Marian Bank*, 1999 WL 151872, *3 (not only does plaintiff have no evidence that former putative class members relied on the case, even if they did "it is their duty, not the court's, to keep apprised of the legal developments in plaintiff's case. The court has no obligation to awaken potential litigants from their lethargy."); *Weisman,* 78 F.R.D. at 674 (plaintiff's attempt to communicate with putative class members post-certification, "to induce them to intervene here . . . poses serious ethical problems."); *Elias v. National Car Rental System, Inc.*, 59 F.R.D. 276, 277 (D. Minn. 1973) ("Rule 23 does not require notice [in the pre-certification context] and to do so is in a sense merely soliciting a client for plaintiff's counsel under the aegis of the court. This would be improper."); *Cherner v. Transitron Electronic Corporation*, 201 F. Supp. 934, 936 (D. Mass. 1962) ("Rule 23 should not be used 'as a device to enable client solicitation'") (internal citation omitted). Indeed, the drafters of the 1966 amendments to Rule 23 have emphasized that "[n]otice . . . should not be used merely as a device for the undesirable solicitation of claims." 1966 Advisory Committee Notes to Rule 23(d). Plaintiff's request for Court-ordered notice should be denied.[5]

    **B.**     **A Global Tolling Order Is Neither Proper Nor Warranted.**

        **1.**     **This Court Lacks Jurisdiction To Toll Claims Of Former Putative Class Members.**

While plaintiff cites numerous cases that pronounce general equitable tolling principles as they apply in a particularized situation (Plaintiff's Memo at 12-14), plaintiff is unable to cite a

---

[5] Although plaintiff's brief is silent on this point, it bears mention that if notice were to issue, which it should not, plaintiff is solely responsible for the entire cost of the notice, *Rand v. Monsanto Co.*, 926 F.2d 596 (7th Cir. 1991), including the significant costs that would be required to produce a list of all class members and their addresses. *See, e.g., Gomez v. Amer. Garment Finishers Corp.,* 200 F.R.D. 579, 584 (W.D. Tex. 2000) ("Plaintiffs must also bear the expense of compiling a list with the name and most recent address of each alleged class member, whether such a list is based on information or received from Defendant or otherwise.").

9

single decision where the court that denied certification proceeded to enter a blanket tolling order.[6] That is not entirely surprising because courts do not possess personal jurisdiction over former putative class members or subject matter jurisdiction over their individual claims once the court denies class certification. "Federal courts are courts of limited jurisdiction. The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Kessler v. National Enterprises, Inc.*, 347 F.3d 1076 (8th Cir. 2003).

Once a court denies class certification, the class claims end and the court no longer has personal jurisdiction over former putative class members. *See In re: Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233, 1245 (11th Cir. 2006) (the denial of class certification limited the court's *in personam* jurisdiction solely to the parties appearing before it); *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 134 F.3d 133, 141 (3rd Cir.1998) (after class certification ruling was reversed, court only had personal jurisdiction over named plaintiffs); *Johnson v. Micron Technology*, 354 F. Supp. 2d 736, 745 (E.D. Mich. 2005) (same).[7]

The denial of class certification also divested this Court of subject matter jurisdiction over any potential claims by putative class members. For subject matter jurisdiction to exist, there must be a pending action – a live controversy – or some other basis for jurisdiction. Once a court denies class treatment, the former putative class members "claims," whatever they may or may not be, are no longer before it. The only live claims left are those of the named plaintiff -- here, Ms. Puffer. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 940 (9th Cir. 2001) (a denial of

---

[6] *See infra* at subsection 2, discussing how plaintiff's cases all relate to live individualized tolling claims.

[7] As Allstate noted in its Opening Memorandum at 10, n.6, it found a single case where a short blanket tolling order was entered, *sua sponte*, without briefing or apparent objection. (Allstate's Opening Memo at 10, n.6, (citing *In re Teflon Products Liability Litig.*, 254 F.R.D. 354, 371 (S.D. Iowa 2008)). In that case, the court did not take up the issue of jurisdiction.

class certification would prevent the court from taking jurisdiction over the claims of the unnamed class members); *Zepeda v.U.S. Ins.*, 753 F.2d 719, 728 n.1 (9th Cir. 1983) ("Without a properly certified class, a court cannot grant relief on a class-wide basis.") (internal citations omitted); *Jordan v. Paul Financial, LLC*, No. C 07-04496 SI, 2009 WL 192888 at *7 (N.D. Cal. Jan. 27, 2009) (holding that "in light of its denial of plaintiff's motion for class certification, the Court can apply an injunction only as to the named plaintiff.") (**Exhibit 1** attached hereto). *Vine v. Republic of Iraq*, 459 F. Supp. 2d 10 (D.D.C. 2006), *overruled in part sub nom.*, *Simon v. Republic of Iraq*, 529 F.3d 1187 (D.C. Cir. 2008), does not require a different result here on the question of jurisdiction. In *Vine*, the court had jurisdiction over the 200 claimants who sought to take advantage of equitable tolling principles because, unlike here, after class certification was denied, all 200 claimants joined together and filed a new lawsuit.

When this Court denied class certification, only Ms. Puffer's individual claims remained in controversy. The former putative class members have no pending claims, nor is there any other basis for the court to exercise its jurisdiction. Therefore, the Court cannot enter any order governing individuals over whom it has no jurisdiction or as to matters over which it has no jurisdiction.[8] *See, gen., Hill v. Baxter Healthcare Corp.*, 405 F.3d 572 (7th Cir. 2005) (once a case is dismissed, court has no subject matter over the claims or personal jurisdiction over the parties); FED. R. CIV. P. 12(h)(3).

### 2. Even If This Court Has Jurisdiction, Equitable Tolling Is Determined On An Individual, Case-By-Case Basis.

Even if the Court had jurisdiction to consider the issue, which it does not, it nevertheless

---

[8] The fact that plaintiff filed a Rule 23(f) petition with regard to this Court's denial of class certification should not in any way alter this court's consideration of the tolling issues. *See In re Copper Antitrust Litigation*, 436 F.3d 782, 793 (7th Cir. 2006) ("The general rule is that the judgment of a district court becomes effective and enforceable as soon as it is entered.").

11

should decline to enter the tolling order plaintiff seeks. It is well established that the application of the doctrine is "fact specific," and thus must be determined on a case-by-case basis. *See, e.g., Powers v. Indiana Dept. of Educ., Div. of Special Educ.*, 61 F.3d 552, 560 (7th Cir. 1995). In fact, the only case decided by a court within this Circuit that dealt with the issue head on has said as much. *Radmanovich*, 271 F. Supp. 2d at 1079.

The other cases cited by plaintiff do not advance her argument for equitable tolling. In those cases, not only was the inquiry regarding equitable tolling made in the context of a *live*, individual claim, but the court in each case also concluded that under the facts presented, tolling was not appropriate. (Plaintiff's Memo at 12-13 (citing *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1990), *cert. denied*, 501 U.S. 1261 (1991) (refusing to apply equitable tolling doctrine under specific facts of an individual and live claim); *Casteel v. Executive Bd. Of Local 703 of Int'l. Brothers of Teamsters*, 272 F.3d 463, 467 (7th Cir. 2001) (same); *Phillips v. Heine*, 984 F.2d 489, 492 (D.C. Cir. 1993) (same); *Hill v. Texaco, Inc*., 825 F.2d 333, 335 (11th Cir. 1987) (same).[9]

The case plaintiff relies upon most heavily for her equitable tolling argument is *Vine*. However, *Vine* does not reach a different conclusion. 459 F. Supp. 2d at 20-25. While the court in *Vine* applied equitable tolling principles in denying a motion to dismiss the claims of a group of more than 200 plaintiffs, unlike what plaintiff requests here, the order was not entered by the judge who denied class certification. *Id*. Rather, **after** the denial of certification, the *Vine* plaintiffs brought their own separate lawsuit. *Id*. at 14-16. In that **new** lawsuit, on defendant's

---

[9] *See also* Plaintiff's Memo at 12-13 (citing *Horton v. Country Mortg. Servs., Inc*., No. 07 C 6530, 2008 WL 2952276 at *3 (N.D. Ill. July 30, 2008) (holding that equitable tolling is an "**issue of fact**" that cannot be decided on a Rule 12(b)(6) motion to dismiss) (emphasis added); *Timoni v. United States*, 419 F.2d 294 (D.C. Cir. 1969) (concluding that statutory language provided for longer filing period than defendant had argued).

12

motion to dismiss for lack of subject matter jurisdiction, the *Vine* court considered the specific factual circumstances that led this group of plaintiffs to delay filing their own lawsuit, and concluded that the specific circumstances involved made the plaintiffs' claims timely. *Id*. at 20-25. Here, unlike *Vine,* this court has no facts with regard to any former putative class member on which to base any decision to toll any limitations period. Indeed, to the contrary, what this Court already has found is "the fact that plaintiff offers 49 declarations describing alleged discrimination occurring as far back as the 1980's . . ." (January 20, 2009 Order at 26, n. 15.) Such a finding certainly runs contrary to the notion that former putative class members were relying on this suit to vindicate their claims. Based on this record, the Court cannot determine that tolling is appropriate for one, let alone all, former putative class members.

In alarmist fashion, however, plaintiff suggests vaguely that any number of women are at risk of immediate loss of a claim without a tolling order. However, plaintiff has presented *no* evidence to suggest that there is any mass of such people. As Allstate explained in its opening Memorandum, only 4% of the putative class terminated their employment within the 300-day window prior to May 9, 2003, such that they may now have tolling issues. (Allstate Opening Memo at 8, n.5.) To the extent any of those approximately 65 women desire to file suit now, they can certainly raise any tolling issues at the appropriate time before the court in which they file suit.

Plaintiff also takes the extreme position that certain former putative class members can only take advantage of the Lilly Ledbetter Fair Pay Act of 2009 so as to have claims reaching back to 2002 if they intervene and "piggyback" on plaintiff's charge of discrimination under the

13

single-filing rule.[10] This argument is a non-starter. Initially, former putative class members had more than *four years* to intervene in this lawsuit, and not a single one did; nor did anyone seek to do so. Indeed, as this Court has noted, there are putative class members who admitted to their awareness of claims for many years, yet did nothing. (January 20, 2009 Order at 21 n. 10, 26 n. 15.) Equally important, however, is the fact that the Seventh Circuit has taken a skeptical view of whether intervention under the "single-filing" rule is even appropriate in individual cases. *See Horton*, 343 F.3d at 900. Without specifically deciding the issue, the *Horton* court held that where, in the non-class context, the purported intervenor attempts to piggy-back on a timely filed charge, the "unexhausted claims [must] arise[] *from the same unlawful conduct*"; it is not enough that the claims arise from facts that "resemble each other or are casually linked to each other." *Id*. at 900, 901 (emphasis added). Like in *Horton*, where the Seventh Circuit affirmed the denial of a motion to intervene, this Court has already expressly concluded that the putative class members' claims are not common and are not typical of one another; *i.e.*, that the claims do not arise from the *same* conduct. (January 20, 2009 Order at 9, 29.) Consequently, tolling for the purpose of permitting putative class members to intervene would serve no purpose.

      In the final analysis, equitable tolling will depend upon the unique facts and circumstances for each person who might bring a claim. The Court's decision not to enter a blanket tolling order would not deprive any former putative class member from litigating tolling issues at the appropriate time based on that person's unique facts and circumstances. On the other hand, entering a blanket tolling order now would deprive Allstate of its right to defend

---

[10] Plaintiff's other alarmist scenario requires little discussion. Plaintiff suggests that certain individuals were reluctant to file their own claims sooner for fear of losing the benefit of class action tolling altogether, and argues that for those individuals it was reasonable for them to first discover what this Court might do. (Plaintiff's Memo at 12.) In that scenario, however, plaintiff describes a savvy litigant who is watching this case and would have sued by now, thereby eliminating any tolling issues. To Allstate's knowledge, no such activity has occurred.

against equitable tolling based on the particular facts and circumstances of any particular claimant. As the record evidence here amply illustrates, Allstate's defenses to equitable tolling are not just theoretical. By depriving Allstate of its substantive right to defend against tolling, any blanket order could well result in Allstate being required to defend against stale claims. Such unprecedented relief is not only unwarranted, but it also would operate to prejudice Allstate and violate the Rules Enabling Act, 28 U.S.C. § 2072, which provides that the class action rules, as rules of procedure, "shall not abridge, enlarge or modify any substantive right." *See also Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right'.").

### III. CONCLUSION

For the foregoing reasons, Allstate Insurance Company requests that the Court (a) conclude that Court notice of denial of class certification need not issue to former putative class members; and (b) decline to issue an Order to further toll the statute of limitations for former putative class members' individual claims.

Dated: February 12, 2009                         /s/ Sallie G. Smylie.
                                                 For Defendant Allstate Insurance Company

Paul R. Garry                                    Richard C. Godfrey P.C.
Brian W. Bulger                                  Sallie G. Smylie, P.C.
Anneliese Wermuth                                Donna M. Welch, P.C.
MECKLER BULGER TILSON                            KIRKLAND & ELLIS, LLP
MARICK & PEARSON LLP                             200 East Randolph
123 North Wacker Drive                           Chicago, Illinois  60601
Suite 1800                                       (312) 861-2000
Chicago, Illinois  60606                         Fax:  (312) 861-2200
(312) 474-7900
Fax:  (312) 474-7879                             *Attorneys for Defendant Allstate Insurance Company*

## **CERTIFICATE OF SERVICE**

        I HEREBY CERTIFY that a true and correct copy of the foregoing **ALLSTATE'S REPLY MEMORANDUM ON ISSUES OF NOTICE OF THE DENIAL OF CLASS CERTIFICATION AND TOLLING OF THE STATUTE OF LIMITATIONS** was filed electronically on February 12, 2009, and will, therefore, be served electronically and by United States mail upon:

| | |
|---|---|
| Linda D. Friedman | Paul W. Mollica |
| STOWELL & FRIEDMAN | Shona B. Glink |
| 321 South Plymouth Court | MEITES, MULDER, MOLLICA & GLINK |
| Chicago, Illinois 60604 | 20 South Clark Street, Suite 1500 |
| (312) 431-0888 | Chicago, Illinois 60603 |
| Fax: (312) 431-0228 | (312) 263-0272 |
| | Fax: (312) 263-2942 |

                                              /s/ Sallie G. Smylie.