# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| KATHERINE PUFFER, on behalf of herself and all others similarly situated, ) ) ) | |
| Plaintiffs, ) ) | Case No. 04 C 5764 |
| v. ) ) | Magistrate Judge Sidney I. Schenkier |
| ALLSTATE INSURANCE COMPANY, ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Katherine Puffer filed this suit on behalf of herself and a putative class alleging that Allstate Insurance Company carried out a nationwide pattern or practice of sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Equal Pay Act, 29 U.S.C. §§ 206 and 207 (doc. #13: Am. Compl. at 11-12, ¶ 4). Plaintiff moved to certify a class of "[a]ll female managers holding the position of Division or Department manager and above who worked or continue to work at Allstate Protection at any time between May 9, 2001, and the present and who have been and continue to be injured by the alleged discriminatory employment policies and practices" (doc. # 126: Pl.'s Class Cert. Mem. at 21). On January 15, 2009, this Court issued an opinion denying plaintiff's motion for class certification on the grounds that plaintiff's proposed class did not meet several of the requirements for class certification under Federal Rule of Civil Procedure 23: commonality, typicality, predominance, and superiority. *Puffer v. Allstate Ins. Co.*, No. 04-5764, 2009 WL 136097 (N.D. Ill. Jan. 15, 2009). The order denying class certification was entered on January 20, 2009 (doc. # 259).

Although the filing of this case tolled the statute of limitations for all putative members of the proposed class, the statute resumed running for those putative class members once this Court entered the order denying class certification on January 20, 2009. *Culver v. City of Milwaukee*, 277 F.3d 908, 914 (7th Cir. 2002). As a result, on January 21, 2009, plaintiff filed an emergency motion to stay the order denying class certification pending the Court's decision on notice to the putative class (doc. # 261). In her motion, plaintiff asked this Court: (1) to issue notice to putative class members of our ruling denying class certification; and (2) to toll the statute of limitations for each putative class member *nunc pro tunc* from January 20, 2009, for an indefinite "reasonable" period of time to allow class members time to evaluate and pursue their claims against Allstate (*Id.* at 1, 6; *see also* doc. # 264: Pl.'s Initial Mem. at 1).

At the hearing on plaintiff's emergency motion, the Court explained that it would not stay the order denying class certification because of the effect that could have on the deadline for seeking an interlocutory appeal pursuant to Federal Rule of Civil Procedure 23(f) (doc. # 267: 01/22/09 Tr. at 7).[1] We rephrased plaintiff's motion as one that sought to stay the effect of the order denying class certification until the Court decided whether to issue notice (*Id.* at 3, 7). In addition, we determined that the motion did not present an emergency: if the Court ultimately decides to stay the effect that its order has on the resumption of the statute of limitations, and to do so *nunc pro tunc* to January 20, 2009, as plaintiff has requested, it would not matter whether the Court did so immediately or after receiving briefing and taking the matter under advisement (*Id.* at 3, 8). We ordered briefing on the following issues: (1) whether the putative class should receive formal notice, under Rule 23, of the

---

[1] In fact, on February 3, 2009, plaintiff filed a petition for permission to appeal pursuant to Rule 23(f). That appeal is docketed as 09-8005. The petition has been fully briefed and remains pending as of this date.

2

denial of class certification and the resumption of the statute of limitations; (2) whether we should stay the effect of our January 20 order on the resumption of the statute of limitations; and (3) whether we should rule that the statute of limitations should be equitably tolled for putative class members for some reasonable period of time (*Id.* at 15-16). Upon reviewing the parties' submissions directed to these issues, the Court asked the parties for "their views, supported by any relevant authority, as to the Court's subject matter and/or personal jurisdiction to rule on equitable tolling for persons who are not named plaintiffs in the case, but who are within the definition of the putative class for which certification was denied" (doc. # 266: 02/05/09 Min. Order). The Court has received and reviewed those supplemental submissions.

For the reasons that follow, we grant plaintiff's motion in part. We hold that under Rule 23(d), we have the discretion to order that the putative class receive notice that class certification has been denied and that this ruling triggered the resumption of the statute of limitations. We further exercise that discretion to require that notice to be sent in this case – although not in the form that plaintiff suggests. However, we deny plaintiff's motion insofar as it asks us to stay the effect of our denial of class certification on the resumption of the statute of limitations, or to make a ruling that all 1,700 putative class members are entitled to equitable tolling of the statute of limitations.

I.

We address first the question of our authority under Rule 23 to require that the putative class members be given notice of the denial of class certification and its effect on the resumption of the statute of limitations. In *Culver,* the Seventh Circuit held that Rule 23(e) required notice to putative class members following decertification of a class, because decertification has the same effect on members of the class, so far as the running of the statute of limitations is concerned, as dismissal of

3

the class action. 277 F.3d at 915. In so ruling, the appeals court stated that Rule 23(e) required that notice of a dismissal be given to "all members of the class." *Id.* at 913. The Seventh Circuit explained that the purpose of this notice is "to enable the class members to protect their interests in the face of the dismissal of the class action," and that one of their interests that warranted their protection was the possible "expiration of the statute of limitations on the class members' claims without their realizing it." *Id.* at 913-14.

The *Culver* court then addressed whether the use of the word "class" in Rule 23(e) applied to putative classes prior to certification. The appeals court stated that while the question had not yet been "definitively settled," the "better view" is that Rule 23(e) applies to the dismissal of a class action prior to certification, reasoning that "the context in which 'class' is used in Rule 23(e) indicates that it is not limited to a certified class." 277 F.3d at 914. The Seventh Circuit further explained that "[t]he prejudice to class members from a dismissal of which they may be unaware is the same" whether that comes after a class is certified or if certification is denied. *Id.*

In the wake of *Culver*, it would appear that Rule 23(e) would mandate the notice that plaintiff seeks here, as other courts have recognized. *See, e.g., Doe v. Lexington-Fayette Urban County Gov't*, 407 F.3d 755, 761 (6th Cir. 2005); *Radmanovich v. Combined Ins. Co. of Am.*, 271 F. Supp. 2d 1075, 1077-78 (N.D. Ill. 2003). However, as Allstate correctly points out, Rule 23(e) was amended in 2003, so that it now does not require notice to "members of the class" (the phrase interpreted by the Seventh Circuit in *Culver*), but instead only requires notice to members of a "certified class." The commentary to this amendment states that its purpose was to resolve ambiguity in the reference formerly in Rule 23(e) to "class action," by making it clear that notice would be required "only if the claims, issues, or defenses of a certified class are resolved by a

4

settlement, voluntary dismissal, or compromise." 2003 Comments to Amendments to Fed. R. Civ. P. 23.

Allstate focuses on this amendment Rule 23(e), arguing that "nothing in Rule 23 *requires* notice to issue to former putative class members after a motion for class certification has been denied" (doc. # 269: Def.'s Supp. Mem. at 1 (emphasis added)). We agree. However, Allstate's Rule 23(e) argument fails to answer the question of whether discretionary authority for the Court to order that notice be given to putative class members may be found elsewhere in Rule 23. As we explain below, we hold that Rule 23(d) provides that authority.

### A.

Rule 23(d)(1) states, in relevant part:

In conducting an action under this rule, the court *may* issue orders that:

* * * * *

(B) require – to protect class members and fairly conduct the action – giving appropriate notice to some or all class members of:

(i) any step in the action;

(ii) the proposed extent of the judgment; or

(iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action.

Fed. R. Civ. P. 23(d)(1)(B) (emphasis added). Although the question of a court's discretion to issue notice under Rule 23(d)(1) has rarely been addressed, a number of considerations lead us to conclude that the rule gives us the discretion to issue notice to putative class members after the denial of class certification.

5

*First*, we find the *Culver* court's discussion of the meaning of the word "class" as used in the former version of Rule 23(e) instructive in our interpretation of Rule 23(d). As was the case with Rule 23(e) at the time of the *Culver* ruling, Rule 23(d) speaks in terms of "class members." We find that the *Culver* court's explanation of why that term as it was used in Rule 23(e) applies to the denial of class certification and class decertification applies to the use of that term in Rule 23(d) as well. That is significant because notwithstanding the change to Rule 23(e), the operative language of Rule 23(d) remained unchanged: Rule 23(d) does not use the phrase "certified class," the term adopted to clarify that Rule 23(e) does not apply to denial of class certification or decertification of classes. "It is . . . a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 489 n. 13 (2004). In light of this principle, the fact that Rule 23(d) continues to refer more broadly to "class members," despite the limitation in Rule 23(e) to "certified class[es]," suggests that no change was intended in the scope of judicial authority under Rule 23(d).

*Second*, Rule 23(d)(1)(B)(i) authorizes a court to require that appropriate notice be given to class members "of any step in the action," in order to "protect class members." Certainly, the denial of class certification is a "step in the action." And, it is a step in the action that, absent notice to putative class members, may injure their interests. While specifically addressing Rule 23(e), the *Culver* court's discussion concerning the potential harm to putative class members from "the expiration of the statute of limitations on the class members' claims without their realizing it," 277 F.3d at 914, applies with full force here. Nonetheless, as in *Culver*, in this case there is the risk that unless putative class members are notified of the denial of class certification, they may fail to file

their own suits and thus fail to 're-arrest' the statute of limitations, and as a result they may find themselves time barred without knowing it." *Id.* at 915. Rule 23(d) allows a court to give notice to help avoid that result, as part of its power to "protect class members."

*Third*, the *Culver* court suggested that its analysis was not limited to notice under Rule 23(e). "Even cases that refuse to apply Rule 23(e) to putative class actions require notice to the members of the putative class if it seems clear that otherwise their interests would be harmed." *Culver*, 277 F.3d at 915. For example, in *Doe v. Lexington-Fayette Urban County Gov't*, the Sixth Circuit reasoned that even courts that have not required notice to putative class members as a general rule under Rule 23(e) have examined whether any prejudice to the class will result if notice is not provided. 407 F.3d at 761-62. Applying that standard, the *Doe* court held that the district court erred in failing to provide notice to putative class members when the class action was dismissed, because they were likely to be prejudiced. *Id.* at 764.

Similarly, the Eighth Circuit also held that even if Rule 23(e) did not require notice to a class that had not yet been certified, the district court must consider potential prejudice to absent class members before determining whether or not to issue notice. *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 764-65 (8th Cir. 2001). *Crawford* held that the district court must consider, among other things, the possibility that potential members of the class would be prejudiced if their claims would expire under a statute of limitations or if potential class members had been relying on the named plaintiff to protect their interests. 267 F.3d at 765. And, an earlier Fourth Circuit case held that if court approval under Rule 23(e) is not required when a class has not been certified, the court must use its discretionary powers under Rule 23 to protect the interests of the putative class members from prejudice. *Shelton v. Pargo*, 582 F.2d 1298, 1310, 1314 (4th Cir. 1978).

7

Allstate cites to a number of other decisions to support its position that notice should not issue to the putative class members (Def.'s Supp. Mem. at 5). In particular, Allstate relies heavily on an unpublished District of Delaware case which held that neither Rule 23(d) nor Rule 23(e) contemplated notice to putative class members after the denial of class certification. *Marian Bank v. Elec. Payment Servs., Inc.*, No. 95-614-SLR, 1999 WL 151872, at *1 (D. Del. Mar. 12, 1999). To the extent that *Marian Bank* found that Rule 23(e) in its prior form did not require notice after the denial of class certification, it adopted an interpretation of Rule 23(e) that the Seventh Circuit rejected in *Culver*. To the extent that the *Marian Bank* court was not moved by the concern that the interests of putative class members could be harmed in the absence of notice after the denial of class certification, that decision rejected a consideration that was central to the Seventh Circuit's analysis in *Culver*.[2]

In light of the authorities we have discussed that recognize the Court's authority to provide notice to putative class members after the denial of class certification, in order to avoid the kind of harm to putative class members discussed in *Culver*, we do not find Allstate's contrary authorities persuasive. Therefore, we find that Rule 23(d)(1)(B)(i) authorizes, but does not automatically require, this Court to order that putative class members be notified of the denial of class certification in this case. We now turn to the question of whether, on the facts of this case, we should exercise our authority to do so.

---

2 One of the concerns expressed in *Marian Bank* was in connection with the notice proposed by plaintiff. The court stated that plaintiff sought to give notice "of the need and opportunity for an intervenor to represent the class and thereby preserve the rights of absent class members." 1999 WL 151872, at *1. The *Marian Bank* court criticized that notice on the ground that it would "provid[e] putative class members with court-ordered notice of the opportunity to sue." *Id.* Any concern about whether the notice to putative class members does more than is necessary to serve the purposes of Rule 23(d)(1)(B)(i) is better addressed by appropriately limiting the contents of the notice, and not by dispensing with notice altogether.

**II.**

Allstate argues that even if this Court possesses the authority to order notice to the putative class members, we should not exercise that authority in this case because plaintiff has not established that "there is a group of people who in fact believed that this lawsuit operated to vindicate their rights, or that such belief was reasonably held" (Def.'s Supp. Mem. at 4). Allstate notes that this Court has not yet issued any formal notice of the class action lawsuit to putative class members (Pl.'s Initial Mem. at 5), and argues that nothing contained in the various communications from plaintiff's counsel or defense counsel "gave putative class members reason to sit on their rights" (*Id.* at 6). And, this case has received little or no media attention, which Allstate says further shows that pendency of this suit is not widely known among putative class members (*Id.* at 3). From all of this, Allstate argues that there is no evidence that putative class members have been specifically informed that the statute of limitations on their claims was tolled while the class action litigation was pending or that the class action suit relieved them of any obligation to pursue their own claims (*Id.* at 5).

Allstate's argument presumes the Court may require notice only if it is convinced that putative class members in fact would be prejudiced otherwise. That presumption is incorrect. In *Culver*, the district court had certified a class and then, before notice of the certification had issued, decertified the class. The appeals court stated that the district judge did not require notice of the decertification of the class because it "thought [the class members] probably were unaware of the suit and therefore would not be prejudiced by it demise." 277 F.3d at 914. However, the Seventh Circuit held that this approach was the wrong one for the district court to take. "'Probably' is not good enough; it implies that some class members may well have been prejudiced." *Id.* The appeals

9

court concluded its analysis by stating that under Rule 23(e), "[t]he judge's duty to order notice unless the risk of prejudice to absent class members is nil . . . ." *Id.*

Thus, *Culver* does not require the kind of certainty of prejudice that Allstate asks us to use as the measuring stick for deciding whether to issue notice. We conclude that it is enough that putative class members were aware of this lawsuit, as that awareness gives rise to the risk – greater than nil – that some of them may lose any right to pursue individual claims without knowing it by expiration of the statute of limitations.

In this case, there is ample evidence that many putative class members were made aware of this lawsuit prior to our decision to deny class certification. A number of putative class members received some of the following information about Ms. Puffer's lawsuit, setting out, at a minimum, the potential application of the lawsuit to "all current and former female employees" of Allstate as well as the topic of the lawsuit, "sex discrimination." Most of the notifications contain further details of the alleged sex discrimination "in promotion and compensation":

- Memoranda dated October 21, 2004, and October 27, 2004, regarding "Retention of Documents for Pending Litigation" sent to "All Allstate Managers and Supervisors" and "All Senior Management Team Members, Officers, Human Resource Directors, Managers, and Senior Managers, Human Resource Information System Senior Managers and Directors," respectively. Both memoranda contained the following relevant text: "Allstate Insurance Company is involved in litigation in federal court in Chicago under Title VII of the Civil Rights Act of 1964 where the plaintiff is alleging claims of sex discrimination. The lawsuit potentially covers all current and former female employees of Allstate Insurance Company ("Allstate"). While Allstate strongly disagrees with the allegations and scope of the lawsuit and intends to defend itself vigorously, until the lawsuit is resolved or its breadth is clarified, Allstate is required by law to preserve any and all documents and electronic information that might relate to the issues in this lawsuit" (Emergency Mot., Ex. B).

- A memorandum dated June 13, 2005, regarding "Retention of Documents for Pending Litigation - Reminder" sent to "All Allstate Officers, Directors, Senior Managers, Managers, RIM Communications." The memorandum included the following relevant text: "Last fall, I sent you a memo directing you to preserve and retain certain documents as a result of a

lawsuit that has been filed against Allstate in which claims of sex discrimination in promotion and compensation are alleged" (Emergency Mot., Ex. B).

- A letter dated March 7, 2007, from Ms. Puffer's attorneys to putative class members regarding "Pending Allstate Gender Class Action Lawsuit." The letter states, in relevant part: "[F]ormer Allstate Assistant Vice President Katherine Puffer is pursuing a class action gender discrimination lawsuit. . . . During her employment at Allstate, Ms. Puffer decried what she believed was unfair treatment of women in both pay and promotion opportunities. Failing to persuade the company, she filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission and retained our law firms to bring a federal class action lawsuit on behalf of Allstate's women. The lawsuit charges, among other things, that Allstate sets salaries for women at the level of Division Manager or above in the P&C group (or predecessor groups) too low and fails to equally promote these women. As part of our duties as counsel, we are presently investigating these claims. . . . Our hope is that, with your help, our judge will certify a nationwide class of women injured by these discriminatory practices and order relief both for past discrimination and to correct Allstate's practices in the future. To make this case effective, we must hear from women who worked at Allstate to uncover how Allstate's managers assigned, paid, promoted and allocated opportunities to men and women. We also would like to hear from women who believe they may have witnessed unequal treatment with respect to pay, promotion or other opportunities. We urge you to read Ms. Puffer's complaint – available through a link . . . – to see whether you experienced or are aware of evidence of the conduct it describes. . . . [W]e encourage you to share this letter with others who may have information relating to the lawsuit so they may contact us if they so choose. We want to hear from you" (doc. # 265: Def.'s Initial Mem., Ex. B). Plaintiff states that this letter or a similar letter sent in June 2007 was sent to more than 90 percent of the putative class members (Pl.'s Reply at 9).

- A letter dated June 28, 2007, from Ms. Puffer's attorneys to putative class members regarding "Pending Allstate Gender Class Action Lawsuit." This letter is essentially the same as the March 2007 letter, but it expands on the description of the charges in Ms. Puffer's suit, stating: "The lawsuit charges, among other things, that Allstate sets salaries for women at the level of Division Manager or above in the P&C group (now Protection) too low, directs women into lower paying jobs, and fails to equally promote or otherwise develop women for upper management positions" (Def.'s Initial Mem., Ex. C).[3]

---

[3] On June 13, 2007, this Court entered an order prohibiting plaintiff's counsel from communicating with current employees of Allstate under Model Rule 4.2, which prohibits communications with a represented party (doc. # 85). Plaintiff acknowledges that it erred in sending out the June 28, 2007, letter in violation of this Court's order. Allstate argues that "[c]ertainly, a letter that should never have been sent in the first instance cannot be used to justify Court-ordered notice now" (Def.'s Supp. Mem. at 6 n.4). We disagree. The Court's mission is "to protect class members and fairly conduct this action." Fed. R. Civ. P. 23(d)(1)(B). To disregard a communication that gave putative class members knowledge of the lawsuit would not protect those putative class members, but instead would penalize them for a misstep by plaintiff's counsel. In any event, even without the June 28 letter, there were enough communications directed to the putative class members to show that many were aware of this lawsuit.

- Plaintiff's attorneys' website, which was referred to in the aforementioned letters, provided the following additional information on the charges and developments in the lawsuit. "Briefly, the lawsuit alleges that Allstate engages in a nationwide pattern or practice of discrimination against women in hiring, retention, pay, promotion, and job assignments, as well as tolerating harassment of women and retaliating against women who complained of discriminatory treatment. The lawsuit requests injunctive, declaratory and monetary relief, and seeks class action status. Ms. Puffer and her counsel . . . have hired experts to study and analyze the relevant data in the lawsuit. Expert analysis has revealed pay disparities between women and men within grades and, in some cases, within job titles. Expert analysis has also found that women are skewed to the jobs within a band with the lowest average earnings. Presently, the parties are in the discovery stages of litigation . . . . If you are a former female P&C employee at the level of Division Manager or above, you may have information that could be helpful. A copy of the operative complaint can be found here. We urge you to read this complaint to see whether you may have experienced any of the conduct described in the complaint" (Def.'s Initial Mem., Ex. D). The internet site was taken down in July 2007 as part of an agreement with Allstate's counsel after plaintiff sent the June 2007 letter in violation of the Court's June 13, 2007 order. Plaintiff cannot determine how many women viewed the complaint before the website was disabled (Pl.'s Supp. Mem. at 7).

- Finally, in connection with the briefing on class certification, the parties secured declarations from 85 putative class members – 5 percent of the putative class. And, while we do not know how many more individuals the parties contacted in the effort to obtain those 85 declarations, it is likely that they did talk to other putative class members about the case (*see, e.g.*, Pl.'s Initial Mem., Ex. F, Dep. of Decl. 15 (indicating conversations with other declarants)).

In light of this evidence, it is not surprising that Allstate agreed with our in-court observation that "many class members may have had knowledge of this lawsuit" (1/22/09 Tr. at 13-14). The foregoing communications were enough to make the putative class aware of Ms. Puffer's suit, and to increase the possibility of prejudice to them if they are not notified of the denial of class certification. While these communications were not directed or sanctioned by the Court, we reject Allstate's contention (Def.'s Supp. Mem. at 6) that this matters to the question of the putative class members' awareness of the suit. *See Radmanovich*, 271 F. Supp. 2d at 1078 (rejecting the defendant's argument that prior official court notice was necessary to demonstrate potential prejudice

to putative class members). Nor is the absence of media publicity about the case of significance here. The evidence shows that many putative class members received notice that this lawsuit was pending, and what it was about; the fact that they received that information from sources other than the media is of no moment. *See Doe*, 407 F.3d at 763-64.[4]

In light of the foregoing evidence, we find that without notice to putative class members, there is a risk that some of them will suffer the kind of prejudice that the *Culver* court envisioned: "the expiration of the statute of limitations on the class members' claims without their knowing it." 277 F.3d at 914. We therefore conclude that it is appropriate to exercise our authority under Rule 23(d)(1)(B)(i) to direct that notice be given to putative class members.

## III.

Before addressing the content of that notice, we consider plaintiff's other requests. Plaintiff asks that we stay the effect of our January 20 order on the running of the statute of limitations for an indefinite "reasonable" period of time to comport with Rule 23's mandate to protect class members, *Culver*, and "fundamental fairness" by giving putative class members an opportunity to intervene in Ms. Puffer's suit. Alternatively, plaintiff asks that we toll the statute of limitations for an indefinite "reasonable" period of time under the principle of equitable tolling to ensure that the claims that individual putative class members may choose to file are not time barred (Pl.'s Initial Mem. at 9-14). When Ms. Puffer filed her class action complaint on September 2, 2004, the

---

4 For that reason, the case cited by defendants, *Griffith v. Javitch, Block & Rathbone, LLP*, 241 F.R.D. 600 (S.D. Ohio 2007), is inapposite. In that case, the district court found that there was no potential for prejudice to putative class members if they did not receive notice of the denial of class certification, where the case had never been certified and had never been the subject of publicity. *Id.* at 602. In contrast to the instant case, the *Griffith* court did not mention any letters, memoranda, or websites that may have made the putative plaintiffs aware of the class action lawsuit in that case. *Id.*

applicable statute of limitations was tolled as to all putative members of the class who would have been parties had the suit been permitted to continue as a class action. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983); *Am. Pipe and Constr. Co. v. Utah*, 414 U.S. 538, 550-54 (1974). The statute of limitations remained tolled for all members of the putative class until January 20, 2009, when we entered the order denying class certification. *Id.* By operation of our January 20 order, the statute of limitations resumed running for the putative class members as of that date. *Culver*, 277 F.3d at 914.

We consider first plaintiff's request that we enter a broad order that all putative class members are entitled to have the statute of limitations equitably tolled. For the reasons set forth below, we deny that request.

### A.

As an initial matter, the Court must determine whether it has jurisdiction to enter such an order. Allstate argues that the moment this Court denied class certification, we lost personal jurisdiction over the putative class members and subject matter jurisdiction over their claims, and thus lost the authority to enter further orders affecting their rights (Def.'s Supp. Mem. at 2, 10). We agree that we lack personal jurisdiction over the putative class members; thus, we need not address the question of subject matter jurisdiction.

The only two appeals court decisions to squarely address the issue have held that upon denial of class certification, a court's *in personam* jurisdiction is limited to the named parties appearing before it. *See In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1245 (11th Cir. 2006); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 134 F.3d 133, 141 (3d Cir. 1998). In *General Motors*, the Third Circuit explained that in the wake of their earlier judgment vacating

the district court's class certification order, virtually none of the putative class members were parties before the appellate court, and in the absence of their constructive or affirmative consent to personal jurisdiction, due process deprived the Court of personal jurisdiction. *Gen. Motors Corp.*, 134 F.3d at 141.

The Seventh Circuit's opinion in *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 333 F.3d 763, 768 (7th Cir. 2003), is not to the contrary. In that case, the Seventh Circuit held that an issue litigated and resolved on a class-wide basis is conclusive as to all putative class members if the absent members were adequately represented by the named litigants and class counsel, whether or not the court otherwise would have had personal or subject matter jurisdiction over them individually. "Just as they receive the fruits of victory, so an adverse decision is conclusive against them," including a decision denying class certification. *Bridgestone/Firestone*, 333 F.3d at 768-69. Flowing from that reasoning, the Seventh Circuit held that its prior judgment reversing the district court's class certification order was binding on unnamed class members, and that the district court had the authority to enforce the denial of class certification order. *Bridgestone/Firestone*, 333 F.3d at 769. Accordingly, the Seventh Circuit ordered the district court to issue an injunction preventing the putative class members and their lawyers from filing class actions with identical claims in other jurisdictions. *Id.* The Seventh Circuit's recognition of a court's power to enforce its order that a case not proceed on a class basis does not imply that a court has personal jurisdiction over putative class members to issue orders affecting individual claims that they may choose to file in this or in other jurisdictions – which is precisely what entry of a general tolling order would do.

Plaintiff does not point to any persuasive case law holding that this Court has personal jurisdiction to issue such orders.[5] Rather, plaintiff argues that because of this Court's inherent discretion to reconsider a denial of class certification, the Court must still have jurisdiction over the putative class (doc. # 268: Pl.'s Supp. Mem. at 2). For this proposition, plaintiff cites *In re IPO Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007). However, that case merely stated the uncontroversial rule that district courts have ample discretion to alter or amend a class certification ruling before final judgment, so long as the district court decision does not conflict with any determination by an appeals court. That decision does not speak to a court's jurisdiction over putative class members during a period after class certification has been denied, and that denial has not been altered.

Plaintiff also argues that her request for a tolling order does not implicate personal or subject matter jurisdiction at all, but rather is merely a request that the Court exercise the broad discretion it possesses to stay proceedings as incidental to its power to control its docket (Pl.'s Supp. Mem. at 2). We disagree. It is one matter for the Court to issue rulings to control the case before it. It is quite another matter for the Court to issue orders that would affect the rights of putative class members – and the defendant(s) they may sue – in separate individual lawsuits filed in this jurisdiction or elsewhere. It is the latter type of order that plaintiff asks us to enter. But, the issuance of that type of order requires us to have personal jurisdiction over the putative class members, which we conclude we do not possess.

---

[5] Plaintiff cites two cases in which the district judge stayed the running of the statute of limitations after denying class certification. In *Remien v. EMC Corp.*, No. 04 C 3727 (N.D. Ill.), the district court issued two minute orders temporarily staying its denial of class certification until the Seventh Circuit issued its ruling on the plaintiff's Rule 23(f) request for interlocutory review of the denial of class certification (docs. ## 331, 335). The district judge offered no explanation for the stay. Likewise, in *In re Teflon Prods. Liab. Litig.*, 254 F.R.D. 354, 371 (S.D. Iowa 2008), the court *sua sponte* included language in its order denying class certification that tolled all statutes of limitations periods for 90 days to enable individuals to file separate complaints. The absence of any explanation for that ruling robs it of any persuasive effect here.

Finally, plaintiff contends that any arguable lack of personal jurisdiction can be cured by issuing a blanket tolling order to cover the putative class members, and then giving them the choice to retroactively waive any objection to personal jurisdiction if they wish to avail themselves of the benefit of the tolling order (Pl.'s Supp. Mem. at 4). Plaintiff offers no good reason that we should issue orders first and worry about personal jurisdiction later, an approach that we find inconsistent with fundamental due process requirements.

For these reasons, the Court concludes that it lacks personal jurisdiction over the putative class members. Accordingly, we lack the authority to issue a blanket order staying the statute of limitations for all putative class members.

### B.

That said, we would not issue such an order even if we had the jurisdiction to do so. Equitable tolling permits a plaintiff to file suit after the expiration of the applicable statute of limitations "if despite the exercise of all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Shropshear v. Corp. Counsel of the City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001). This analysis is "fact specific," *Powers v. Indiana Dep't of Educ., Div. of Special Educ.*, 61 F.3d 552, 560 (7th Cir. 1995), thus making any blanket tolling order of the type plaintiff envisions inappropriate.

We do not have even the most basic information that would allow us to make that fact specific determination as to each of the 1,700 putative class members. For example, we do not know what each person knew about this lawsuit, when she learned it, and what effect (if any) it had on her decision not to file suit. Nor do we know which putative class members will attempt to pursue an individual claim. And, for those who choose to file a claim, we do not know how long they will wait

17

to do so after learning of the denial of class certification (whether through notice directed by the Court or by other means).

All of these considerations, and perhaps others, can be fully considered and addressed in the context of individual suits that various putative class members may choose to file. We agree with the *Radmonovich* court that whether a particular individual is entitled to equitable tolling should be determined on a case-by-case basis if and when she files her own lawsuit. 271 F. Supp. 2d at 1079 (denying the plaintiff's motion for a stay of the statute of limitations because of the diversity between each absent individual's claims). Those kinds of individual determinations made in concrete cases are more likely to serve equity than a more abstract group determination of whether tolling should apply to some 1,700 persons.[6]

Accordingly, even if the Court had jurisdiction to enter a blanket equitable tolling order, we would decline to do so. In denying plaintiff's request for an equitable tolling order, we express no view on whether putative class members will be entitled to equitable tolling in individual suits they may choose to file. That decision will be for the judge presiding in a putative class member's individual suit to make.[7]

---

6 We are not persuaded to change this result by the one case cited by plaintiff which applied equitable tolling after the court denied class certification. *See, Vine v. Republic of Iraq*, 459 F. Supp. 2d 10, 23-24 (D.D.C. 2006), *overruled in part, Simon v. Republic of Iraq*, 529 F.3d 1187 (D.C. Cir. 2008) (holding that lawsuit filed after denial of class certification was timely because specific factual circumstances of group of plaintiffs who filed their own lawsuit showed that equitably tolling applied). Unlike in *Vine*, the putative class members in this case do not have the same factual circumstances necessary to come to a blanket equitable tolling decision.

7 We also deny plaintiff's alternative request that we stay the resumption of the statute of limitations that ordinarily would result from our January 20 order. We agree that we have the jurisdiction to decide whether to stay an interlocutory order that we have issued. *See Texas Indep. Producers & Royalty Owners Ass'n. v. E.P.A.*, 410 F.3d 964, 980 (7th Cir. 2005) (federal courts have inherent power to stay their own proceedings). However, we view this request as a back door means of requesting what is tantamount to equitable tolling. The purpose of issuing notice is to give the putative class members an opportunity to file suits within the statute of limitations if they can, and if they cannot, to be in a position to explain in a separate suit why the statute should be equitably tolled. The purpose of notice is not to eliminate the statute of limitations.

# IV.

Finally, we consider the content of the notice that should be given to putative class members. Plaintiff has proposed a notice (Pl.'s Initial Mem. at 9, Ex. A), which has drawn strenuous objection from Allstate (Def.'s Supp. Mem. at 7-9).

In deciding the contents of the notice, we return to its purpose: to ensure that putative class members who may have refrained from filing suit know that the denial of class certification means that the statute of limitations on their ability to file suit now is running. We will require that kind of notice to help prevent the putative class members from unwittingly losing their claims by operation of the statute of limitations – the concern identified by the Seventh Circuit in *Culver*. Rule 23(d)(1) notice is not intended to encourage putative class members to file (or not file) suit, or to file suit in any particular court, or to suggest which counsel that individual putative class members may consult.

In our judgment, plaintiff's proposed notice roams well beyond the proper province of Rule 23(d)(1) notice. Thus, we will not require that putative class members receive the notice plaintiff has proposed. Rather, we direct the parties to meet and confer to reach agreement on a notice that satisfies the purposes of Rule 23(d)(1) as discussed in this opinion. We also direct the parties to meet and confer with respect to the mechanics of distribution of the notice, and who should bear the

---

Indeed, plaintiff has not explained why, if accepted here, the kind of stay she proposes should not issue in every case where class certification is denied, since every denial of class certification triggers the resumption of the statute of limitation. If accepted, plaintiff's proposal could eviscerate the rule that the denial of class certification resumes the running of the statute of limitations. We decline to embark down that path.

19

cost of notice. We will set a schedule for the parties to submit their recommendations on these matters by separate order.[8]

ENTER:

/s/ Sidney I. Schenkier
SIDNEY I. SCHENKIER
United States Magistrate Judge

DATED: March 12, 2009

---

[8] The Court will promptly rule on the form of notice to be sent to the parties, as well as these other related matters. However, it is our intent to refrain from permitting the notices to be sent until the Seventh Circuit rules on the pending petition for permission to take an interlocutory appeal of the Court's denial of class certification.